**FILED**

AUG 0 4 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC CHAMBERS, | No. C 13-3303 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| GARY SWARTHOUT, Warden, | |
| Respondent. | |
| _____/ | |

**INTRODUCTION**

Petitioner, a California prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254.  Respondent was ordered to show cause why that the petition should not be granted.  Respondent filed an answer, and petitioner filed a traverse.  For the reasons set out below, the petition is **DENIED**.

**STATEMENT**

In 2001, a Santa Clara Superior Court jury found petitioner guilty of attempted robbery, robbery, and making terrorist threats.  Petitioner was sentenced to a term of 28 years and 4 months in state prison, and he is currently serving his sentence at Solano State Prison.  On June 13, 2003, the California Court of Appeal affirmed the judgement.  On August 20, 2003, the California Supreme Court denied review of petitioner's direct appeal.  On June 11, 2008, the

1  California Supreme Court denied a petition for writ of habeas corpus. On November 28, 2011,
2  petitioner filed a second petition for a writ of habeas corpus in the California Supreme Court
3  which was summarily denied as untimely with a citation to *In re Robbins*, 18 Cal. 4th 770, 780
4  (1998).

5          Evidence at trial showed that petitioner attempted to rob, robbed, and threatened Mary
6  Martinez and her daughter, Brandi Brown. On December 16, 2000, petitioner came to
7  Martinez's house in order to claim payment for a debt (Ans. Exh. B at 2). In the ensuing
8  scuffle, petitioner demanded his money at least twice and eventually left (*id.* at 3). Brown
9  testified that on December 21, 2000, Brown temporarily left her possessions in petitioner's
10 motel room (*id.* at 4). The next day, petitioner refused to return Brown's belongings and later
11 told her she would not be getting them back (*ibid.*) On December 28, 2000, Martinez reported
12 that petitioner had threatened her by saying, "[y]ou don't know who you're fucking with, I'll have
13 your ass on a platter." (*id.* at 5). In addition, Martinez reported that she had received three
14 telephone calls from an unidentified male who threatened her (*id.* at 2). On one occasion, the
15 caller said, "[b]itch, you don't know who you're fucking with." (*ibid.*) Another time, a caller
16 said, "[ b]etter watch out, [you are] gonna get it." (*ibid.*) Furthermore, Martinez reported
17 experiencing loud knocking on her trailer's door and hang-up calls immediately after she
18 reported defendant's criminal activity to the police (*ibid.*)

### STANDARD OF REVIEW

20         Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a
21 federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody
22 pursuant to the judgment of a State court only on the ground that he is in custody in violation of
23 the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a). The petition may
24 not be granted with respect to any claim adjudicated on the merits in state court unless the state
25 court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an
26 unreasonable application of, clearly established Federal law, as determined by the Supreme
27 Court of the United States; or (2) resulted in a decision that was based on an unreasonable
28 determination of the facts in light of the evidence presented in the State court proceeding." 28

U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

**ANALYSIS**

## I.    New Evidence

Petitioner claims that new evidence establishes his actual innocence.  Respondent contends that this claim is procedurally barred because the California Supreme Court denied the habeas petition in which this claim was raised as untimely.

A federal court will not review questions of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal ground and is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).  In cases in which a state prisoner has defaulted his claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. *Id*. at 750.  This claim was rejected by the California Supreme Court with citations to *In re Robbins*, 18 Cal.4th 770, 780 (1998).  Such a citation signals that the

United States District Court
For the Northern District of California

petition was denied as untimely, a state law ground that is sufficiently independent and adequate to bar federal habeas relief. *See Walker v. Martin*, 131 S. Ct. 1120, 1128–31 (2011); *Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003). Accordingly, the California Supreme Court's citation to *Robbins* in denying this claim is sufficient to procedurally bar federal habeas relief.

There are exceptions to procedural default, of course. If a habeas petitioner shows cause and prejudice, a court may not reach the merits of procedurally defaulted claims. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (citations omitted). If a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of the successive, abusive, procedurally defaulted or untimely claims if the failure to hear the claims would constitute a "miscarriage of justice." *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931–32 (2013).

Petitioner does not assert cause and prejudice, but his claim of factual innocence, if true, would establish a "miscarriage of justice" and excuse the procedural default. The Supreme Court limits the "miscarriage of justice" exception to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496). Under this exception, a petitioner may establish a procedural "gateway" permitting review of defaulted claims if he demonstrates "actual innocence." *Id.* at 316 & n.32. The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id.* at 321. It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Id.* at 329.

Here, petitioner attempts to establish actual innocence by presenting a declaration by Mary Martinez. In her declaration, Martinez claims the following:

> There were false reports made by officers and I feel I need to speak my mind to straighten out this whole ordeal. The charges against [petitioner], from which I was told, include: attempted robbery and terrorist threats. These are falsely made and untrue. My daughter Brandi Brown was upset behind the fact that [petititioner]'s girlfriend Pooky (Allishia Hall) was holding Brandi's clothing . . . The attempt of holding Brandi's clothing for ransom was not made by [petitioner] . . .
>
> The night of December 16, 2000 was my birthday . . . [petitioner] entered my room to ask me for the money which I owed him . . . Neither [petitioner] nor I was aware

1

> that Brandi had paid my debt to [petitioner]'s associate . . . I was never I any fear
> for my life and my daughter Brandi either . . . The debt was paid with no force or
> threat on our being.

2

3

> I swear those were false charges put on [petitioner] and were not charges that
> neither Brandi nor I stated against [petitioner].

4

5

(Decl. Martinez).  At the preliminary hearing and at trial, Brown and Martinez testified that

6

petitioner had robbed Brown and threatened Martinez (*see* Ans. Exh. B at 2–5).  Here, Martinez

7

attempts to recant her testimony and refute Brown's statements.  In order to qualify as an

8

exception to procedural default, petitioner must show this Court that no reasonable juror would

9

have convicted petitioner in light of the new evidence.  A reasonable juror could still choose to

10

believe Brown's version of events over Martinez's declaration, and thereby conclude that

11

petitioner was guilty.  Neither Martinez's declaration nor any other evidence casts doubt on the

12

credibility of Brown's testimony.  In addition, this Court considers new evidence together with

13

old evidence, and Martinez's trial testimony directly contradicts her current declaration.  This

14

lack of consistency undercuts Martinez's credibility and reduces the weight of her testimony.

15

> In addition, a  reasonable juror could conclude that Martinez's declaration was either

16

coerced or false.  First, the state courts found that a prior declaration that petitioner submitted, in

17

which Brown purported to recant her trial testimony, had been coerced (Ans, Exh. E at SC 1–2).

18

Second, there was testimony from an expert that petitioner is a member of a gang that

19

intimidated witnesses in the past (Ans. Exh. B at 8).  Third, Martinez has previously claimed

20

that petitioner threatened her, and that she had received telephone threats from an unidentified

21

male after reporting petitioner to the police (*id.* at 2).  Finally, in her declaration, Martinez

22

claims that she was not "aware of the outcome [of the trial] until recently  . . . When I

23

discovered what [petitioner]'s charges against him were, I was appalled!" (Decl. Martinez).

24

Martinez's claim that she was unaware of the charges against petitioner is suspicious as

25

Martinez originally reported petitioner to the police and testified in support of those charges at

26

trial.  While these factors do not definitively establish that Martinez's declaration was coerced

27

or false, they provide reasonable grounds for juror to reject it.

28

> Thus, petitioner has not shown that "it is more likely than not that no 'reasonable juror'
> would have convicted him," petitioner's new evidence fails to meet the standard set forth in

1   *Schlup*. *See Schlup*, 513 U.S. at 329. For these reasons, petitioner has not shown that an

2   exception to the procedural default exists here.

3   **II.     Ineffective Assistance of Counsel**

4           Petitioner claims that his appellate counsel provided ineffective assistance on appeal.

5   Specifically, petitioner alleges that appellate counsel advised Mary Martinez not to recant her

6   trial testimony and that appellate counsel demonstrated "substandard advocacy" by failing to

7   investigate claims of Martinez's allegedly perjured testimony (Pet., at 9). This claim is also

8   procedurally barred, as it was also denied as untimely by the California Supreme Court in the

9   same habeas petition as the actual innocence claim discussed above. (Ans. Exh. E). As

10  explained above, California's timeliness requirement is sufficient to bar federal habeas relief

11  here. *See Walker*, 131 S. Ct. at 1128–31.

12          Furthermore, this claim lacks merit. The Due Process Clause of the Fourteenth

13  Amendment guarantees a criminal defendant the effective assistance of counsel on his first

14  appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 391–405 (1985). Claims of ineffective

15  assistance of appellate counsel are reviewed according to the standard set out in *Strickland v.*

16  *Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that counsel acted

17  unreasonably in failing to discover and brief a merit-worthy issue. *Smith v. Robbins*, 528 U.S.

18  259, 285 (2000). Second, the petitioner must demonstrate a reasonable probability that, but for

19  appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal.

20  *Id.* at 285–86. Appellate counsel will frequently remain above an objective standard of

21  competence and have caused his client no prejudice because he declined to raise a weak issue.

22  *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983).

23          First, petitioner claims that his appellate counsel advised Mary Martinez against

24  recanting her testimony. However, petitioner offers no evidence to substantiate this claim, and

25  Martinez's declaration makes no mention of this alleged occurrence. As it was petitioner's

26  burden to show that appellate counsel acted unreasonably here, this particular claim cannot

27  stand. Second, petitioner claims his appellate counsel failed to report or investigate Martinez's

28  desire to recant her testimony. Again, petitioner does not submit any evidence that substantiates

United States District Court
For the Northern District of California

1  this claim.  In fact, an email sent from appellate counsel to petitioner establishes that appellate

2  counsel actually tried to reach Martinez during the appeal process, but "Ms. Martinez has not

3  returned my numerous phone calls.  I will keep trying to contact her." (Ans. Exh. E at 18).

4  Furthermore, petitioner fails to show prejudice; for the reasons explained above, even with

5  Martinez's declaration in his appeal, petitioner would not have a reasonable probability of

6  prevailing on a claim of actual innocence.

## CONCLUSION

8        For the foregoing reasons, this Court DENIES the Petition for Writ of Habeas Corpus.

9  A certificate of appealability will not issue.  Reasonable jurists would not "find the district

10  court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529

11  U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of

12  Appeals.  The Clerk shall enter judgment in favor of Respondent and close the file.

13  **IT IS SO ORDERED.**

14  Dated: August ____, 2014.

15                             WILLIAM ALSUP
                           UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California